1
2
3
4
5
6
7

8                       **UNITED STATES DISTRICT COURT**

9                       **EASTERN DISTRICT OF CALIFORNIA**

10

11 | ANDREANA WINTER,                              ) Case No. 1:21-cv-01194-SAB (PC)
                                                   )
12 |          Plaintiff,                           )
                                                   ) ORDER DIRECTING CLERK OF COURT TO
13 |     v.                                        ) RANDOMLY ASSIGN A DISTRICT JUDGE TO
                                                   ) THIS ACTION, FINDINGS AND
14 | CALIFORNIA DEPARTMENT OF                      ) RECOMMENDATIONS RECOMMENDING
   | CORRECTIONS AND REHABILITATION,              ) DISMISSAL OF THE ACTION
15 | et al.,                                       )
                                                   ) (ECF No. 7)
16 |          Defendants.                          )
                                                   )
17 |                                               )

18        Plaintiff Andreana Winter is proceeding *pro se* and *in forma pauperis* in this civil rights action

19  pursuant to 42 U.S.C. § 1983.  This matter was referred to a United States Magistrate Judge pursuant

20  to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  Plaintiff filed the instant action on November 6,

21  2020.

22        On November 4, 2021, the Court screened Plaintiff's complaint, found no cognizable claims,

23  and granted Plaintiff thirty days to file an amended complaint.  (ECF No. 6.)  Plaintiff did not file an

24  amended complaint or otherwise respond to the Court's November 4, 2021.  Therefore, on December

25  14, 2021, the Court ordered Plaintiff to show cause as to why the action should not be dismissed.

26  (ECF No. 7.)  Plaintiff has not responded to the order to show cause and the time to do so has passed.

27  Accordingly, dismissal is warranted.

28  ///

                                              1

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**II.**

**COMPLAINT ALLEGATIONS**

In July 2019, Plaintiff sought to submit a CDCR Form 1074 in order to correspond with inmate Kohut.  The form was submitted to CCI Gates (not named, possible Doe) to which no response was received.

///

2

1    In mid-November 2019, Plaintiff received a copy of an approved Form 1074 via institutional

2    mail.  A couple days later, Plaintiff sent a letter to inmate Kohut as well as a copy of the completed

3    form to advise him of the authorization.  The reverse side of the Form 1074 copy contained an

4    advisement/request to Pleasant Valley State Prison mailroom officials so the document would be

5    properly filed.  A couple of weeks later, Plaintiff received a response from inmate Kohut, and the

6    envelope bore the stamp "correspondence on file."  Plaintiff sent Kohut a letter the following day.  On

7    December 30, 2019, Plaintiff received the letter back with a notice on the envelope that stated there

8    was no Form 1074 on file.  On January 2, 2020, Plaintiff meet with Defendant Gaona in an attempt to

9    fix the problem.  Plaintiff explained the situation to Gaona and provided copies of the approved Form

10   1074, which contained Gaona's signature.  Gaona retained the documents and Plaintiff was

11   rescheduled to be seen the following week.

12          On January 13, 2020, Plaintiff was summoned and informed by Defendant Gaona that the

13   approval had not yet been entered in either Plaintiff or inmate Kohut's files.  One copy of the Form

14   1074 was returned to Plaintiff, and Plaintiff was directed to return the following week.

15          Plaintiff made repeated attempts to write inmate Kohut throughout the period described

16   following the Form 1074's approval.  Plaintiff received mail from inmate Kohut, but Plaintiff's mail

17   was returned from Pleasant Valley State Prison with a notation that there was no Form 1074 on file.

18          On January 27, 2020, Plaintiff was advised by Defendant Gaona that the Form 1074 was still

19   not entered in either Plaintiff or inmate Kohut's files.  Plaintiff presented more mail she had received

20   from inmate Kohut which bore the stamp "correspondence on file."  Defendant Gaona advised

21   Plaintiff to submit another Form 1074.  Gaona could have looked on the computer and resolved the

22   whole issue.  Instead, Gaona chose to give Plaintiff the runaround.

23          In early February 2020, Plaintiff filed an inmate appeal to the appeals coordinator.  Plaintiff

24   was subsequently interviewed by Defendant Ollison.  Plaintiff presented documentation and Ollison

25   advised Plaintiff that there was Form 1074 in either Plaintiff of Kohut's files.  Plaintiff was later

26   summoned for a follow-up interview and Ollison claimed that measures had been taken in the form of

27   phone calls and e-mails and the issue was resolved.

28

3

1   On April 3, 2020, an outgoing letter addressed to inmate Kohut was "held up in the unit office

2   at CCWF due to a nightwatch official's claim of there being no 1074 on file." Plaintiff filed another

3   inmate appeal and was given assurance by an official that "it would not be recurring."

4   **III.**

5   **DISCUSSION**

6   **A.      First Amendment-Mail Interference**

7   Under the First Amendment, inmates have the right to send and receive mail. See Thornburgh

8   v. Abbott, 490 U.S. 401, 407 (1989); Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). However, a

9   prison may adopt regulations that impinge on an inmate's constitutional rights if those regulations are

10  "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987);

11  Prison Legal News v. Lehman, 397 F.3d 692, 699 (9th Cir. 2005) (holding that an inmate's right to

12  send and receive mail "is subject to 'substantial limitations and restrictions in order to allow prison

13  officials to achieve legitimate correctional goals and maintain institutional security'"). The Turner

14  standard applies to regulations and practices concerning all correspondence between prisoners.

15  Thornburgh, 490 U.S. at 413.

16  When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a

17  'closer fit between the regulation and the purpose it serves.'" Witherow, 52 F.3d at 265 (quoting

18  Thornburgh, 490 U.S. at 412). Courts afford greater protection to legal mail than non-legal mail. See

19  Thornburgh, 490 U.S. at 413. A single mistake or occasional mishandling of mail, legal or nonlegal,

20  does not state a claim under section 1983. Reynolds v. Potts, 8 F.3d 29 (9th Cir. 1993) (citations

21  omitted). A claim for negligent mishandling or misdirection of mail is also not actionable under 1983.

22  Rhinehart v. Gomez, 205 F.3d 1352 (9th Cir. 1999) (citing Daniels v. Williams, 474 U.S. 327, 330–32

23  (1986)). Moreover, a plaintiff must be able to show that she was injured; mere delay in receiving or

24  sending mail does not state a cognizable claim. See Reynolds, 8 F.3d at 29; (citing Morgan v.

25  Montanya, 516 F.2d 1367, 1371 (2d Cir. 1975)).  Isolated incidents of mail interference without any

26  evidence of improper motive or resulting interference with the right to counsel or access to the courts

27  do not give rise to a constitutional violation, however. See Smith v. Maschner, 899 F.2d 940, 944

28

1 (10th Cir. 1990); Morgan v. Montanye, 516 F.2d 1367, 1370-71 (2d Cir. 1975) (no claim where letter

2 from prisoner's attorney opened out of prisoner's presence in single instance).

3      The handling of inmate mail is governed by the California Code of Regulations, title 15, §§

4 3130–3147.  To correspond with one another, CDCR inmates must submit a form 1074, Request for

5 Correspondence Approval. Cal. Code Regs. tit. 15, § 3139. "When incoming or outgoing mail,

6 packages, or publications addressed to or being sent by an inmate are withheld or disallowed, the

7 inmate shall be informed via CDCR Form 1819 . . . , Notification of Disapproval-

8 Mail/Packages/Publications, of the reason, disposition, name of official disallowing the

9 mail/package/publication, and the name of the official to whom a grievance can be directed. Cal. Code

10 Regs. tit. 15, § 3136(a).

11      Plaintiff contends that as a result of repeated unjust delays in the communication between

12 Plaintiff and inmate Kohut, Plaintiff's First Amendment rights were violated.  Plaintiff's conclusory

13 allegations of isolated instances of interference with or delay of mail are insufficient to state a

14 cognizable claim.  Although allegations of delayed delivery for "an inordinate amount of time" have

15 been held sufficient to state a claim for violation of the First Amendment, see e.g., Antonelli v.

16 Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996), the Ninth Circuit and other Courts of Appeal have found

17 temporary and/or isolated instances of delay, like those alleged to have occurred in Plaintiff's

18 complaint, do not offend any First Amendment principles. See Crofton v. Roe, 170 F.3d 957, 961 (9th

19 Cir. 1999) (as amended); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003); Gardner v. Howard, 109

20 F.3d 427, 431 (8th Cir. 1997); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990); see also

21 Furnace v. Cope, No. 1:16-CV-00420-LJO-BAM PC, 2018 WL 2198716, at *7 (E.D. Cal. May 14,

22 2018) (recommending sua sponte dismissal of prisoner's outgoing mail claims pursuant to 28 U.S.C. §

23 1915A(b)(1), (2) and 28 U.S.C. § 1915(e)(2)(B)(ii)).

24      Furthermore, Plaintiff does not describe the specific actions by each of the several named

25 Defendants.  In addition, to the extent certain Defendants are named solely because of their

26 supervisory role, a plaintiff may state a claim for against a supervisor based on the supervisor's

27 knowledge of, and acquiescence in, unconstitutional conduct by his or her subordinates. Starr v. Baca,

28 652 F.3d 1202, 1207 (9th Cir.2011).  "A defendant may be held liable as a supervisor under § 1983 'if

1    there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a

2    sufficient causal connection between the supervisor's wrongful conduct and the constitutional

3    violation.' " Id. (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir.1989)). "The inquiry into

4    causation must be individualized and focus on the duties and responsibilities of each individual

5    defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v.

6    Murphy, 844 F.2d 628, 633 (9th Cir.1988).  A causal connection is established if a defendant sets in

7    motion a series of acts by others or knowingly refuses to terminate a series of acts by others that the

8    supervisor reasonably should have known would lead to a constitutional violation. Starr, 652 F.3d at

9    1207–08 (citing Dubner v. City & County of San Francisco, 266 F.3d 959, 968 (9th Cir.2001)). " 'A

10   supervisor can be liable in his individual capacity for his own culpable action or inaction in the

11   training, supervision, or control of his subordinates; for his acquiescence in the constitutional

12   deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.' "

13   Starr, 652 F.3d at 1209 (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir.1998)).

14   Moreover, Defendants cannot be held liable simply because they were involved in the appeals process.

15   There is no constitutional right to a prison administrative appeal or grievance system. See Ramirez v.

16   Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  To the

17   extent Plaintiff seeks to hold Defendants liable as supervisors, she has failed to show any personal

18   involvement in the alleged constitutional violation.

19                                                    **IV.**

20                **FAILURE  TO OBEY COURT ORDER AND FAILURE TO PROSECUTE**

21         Here, the Court screened Plaintiff's complaint, and on November 4, 2021, an order issued

22   providing Plaintiff with the legal standards that applied to her claims, advising him of the deficiencies

23   that needed to be corrected, and granting him leave to file an amended complaint within thirty days.

24   (ECF No. 6.)  Plaintiff did not file an amended complaint or otherwise respond to the Court's November

25   4, 2021 order.  Therefore, on December 14, 2021, the Court ordered Plaintiff to show cause within

26   fourteen (14) days why the action should not be dismissed.  (ECF No. 7.)  Plaintiff failed to respond to

27   the December 14, 2021, order and the time to do so has passed.

28         Local Rule 110 provides that "[f]ailure of counsel or of a party to comply with these Rules or

                                                      6

1    with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . .

2    within the inherent power of the Court."  The Court has the inherent power to control its docket and

3    may, in the exercise of that power, impose sanctions where appropriate, including dismissal of the

4    action.  Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000).

5         A court may dismiss an action based on a party's failure to prosecute an action, failure to obey

6    a court order, or failure to comply with local rules.  See, e.g. Ghazali v. Moran, 46 F.3d 52, 53-54 (9th

7    Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61

8    (9th Cir. 1992) (dismissal for failure to comply with an order to file an amended complaint); Carey v.

9    King, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (dismissal for failure to comply with local rule requiring

10   pro se plaintiffs to keep court apprised of address); Malone v. United States Postal Serv., 833 F.2d 128,

11   130 (9th Cir. 1987) (dismissal for failure to comply with court order); Henderson v. Duncan, 779 F.2d

12   1421, 1424 (9th Cir. 1986) (dismissal for lack of prosecution and failure to comply with local rules).

13        "In determining whether to dismiss an action for lack of prosecution, the district court is required

14   to consider several factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's

15   need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring

16   disposition of cases on their merits; and (5) the availability of less drastic sanctions.' "  Carey, 856 F.2d

17   at 1440 (quoting Henderson, 779 F.2d at 1423).  These factors guide a court in deciding what to do, and

18   are not conditions that must be met in order for a court to take action.  In re Phenylpropanolamine (PPA)

19   Products Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

20        In this instance, the public's interest in expeditious resolution of the litigation and the Court's

21   need to manage its docket weigh in favor of dismissal.  In re Phenylpropanolamine (PPA) Products

22   Liability Litigation, 460 F.3d at 1226.  Plaintiff was ordered to file an amended complaint within thirty

23   days of November 4, 2021 and has not done so.  Accordingly, the operative pleading is the November

24   6, 2020 complaint which has been found not to state a cognizable claim.  Plaintiff's failure to comply

25   with the order of the Court by filing an amended complaint hinders the Court's ability to move this

26   action towards disposition.  This action can proceed no further without Plaintiff's compliance with the

27   order and her failure to comply indicates that Plaintiff does not intend to diligently litigate this action.

28   ///

Since it appears that Plaintiff does not intend to litigate this action diligently there arises a rebuttable presumption of prejudice to the defendants in this action.  In re Eisen, 31 F.3d 1447, 1452-53 (9th Cir. 1994).  The risk of prejudice to the defendants also weighs in favor of dismissal.

The public policy in favor of deciding cases on their merits is greatly outweighed by the factors in favor of dismissal.  It is Plaintiff's responsibility to move this action forward.  In order for this action to proceed, Plaintiff is required to file an amended complaint curing the deficiencies in the operative pleading.  Despite being ordered to do so, Plaintiff did not file an amended complaint or respond to the order to show cause and this action cannot simply remain idle on the Court's docket, unprosecuted.  In this instance, the fourth factor does not outweigh Plaintiff's failure to comply with the Court's orders.

Finally, a court's warning to a party that their failure to obey the court's order will result in dismissal satisfies the "consideration of alternatives" requirement.  Ferdik, 963 F.2d 1262; Malone, 833 F.2d at 132-33; Henderson, 779 F.2d at 1424.  The Court's November 4, 2021 order requiring Plaintiff to file an amended complaint expressly stated: "If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend to a district judge that this action be dismissed consistent with the reasons stated in this order."  (ECF No. 6.)  In addition, the Court's December 14, 2021, order to show cause specifically stated: "Plaintiff's failure to comply with this order will result a recommendation to dismiss the action." (ECF No. 7.)  Thus, Plaintiff had adequate warning that dismissal would result from her noncompliance with the Court's order.

## V.

## ORDER AND RECOMMENDATION

The Court has screened Plaintiff's complaint and found that it fails to state a cognizable claim. Plaintiff has failed to comply with the Court's order to file an amended complaint or respond to the Court's order to show why the action should not be dismissed.  In considering the factors to determine if this action should be dismissed, the Court finds that this action should be dismissed for Plaintiff's failure to state a cognizable claim, failure to obey the November 4, 2021 and December 14, 2021 orders, and failure to prosecute this action.

Accordingly, IT IS ORDERED that the Clerk of Court randomly assign a District Judge to this action.

1    Further, IT IS HEREBY RECOMMENDED that this action be DISMISSED for Plaintiff's

2 failure to state a claim, failure to comply with a court order, and failure to prosecute.

3    This Findings and Recommendation is submitted to the district judge assigned to this action,

4 pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen **(14) days** of

5 service of this Recommendation, Plaintiff may file written objections to this findings and

6 recommendation with the Court.  Such a document should be captioned "Objections to Magistrate

7 Judge's Findings and Recommendation."  The district judge will review the magistrate judge's Findings

8 and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file

9 objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler,

10 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

11

12 IT IS SO ORDERED.

13 Dated:    **January 10, 2022**

14                                                                  UNITED STATES MAGISTRATE JUDGE

9